UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KATHERINE PRIESTLEY,

Petitioner,

13 Civ. 4755 (PAE)

-against-

PANMEDIX INC., PARMEDIX INC. ELECTRONIC KNOWLEDGE PUBLISHING, INC., COGNITION PHARMACEUTICALS, LLC MCDONALD COMRIE, DAVID ERLANGER, PHILLIP YEE, BALLON, STOLL, BADER & NADLER, PC, HALKET WEITZ, CURTIS COMRIE, ROBERTA COMRIE, MARY ERLANGER, DARIN KAPLAN, RICHARD PECK, LINDA BIERER, TARA MACLEOD, MELVIN HELLER, JOHN THEODORACOPULOS, ALEXIS THEODORACOPULOS, STEPHANIE PARK, NICOLE KAPLAN, LITTLE ROCK, LTD, TANYA KAUSHIK, MABEL TRUESDELL, RELIDE REALTY, DENLOW PRIVATE TRUSTCO, LTD, and ROSS YOUNGMAN,

Respondents.

---

# MEMORANDUM OF LAW IN SUPPORT OF RESPONDENTS' MOTION FOR SUMMARY JUDGEMENT

---

BALLON STOLL BADER & NADLER, P.C.
729 Seventh Avenue - 17th Floor
New York, New York 10019
(212) 575-7900

*Attorneys for Respondents*

TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES .......... ii

PRELIMINARY STATEMENT .......... 1

FACTS .......... 2

ARGUMENT .......... 7

I. RESPONDENTS ARE ENTITLED TO SUMMARY JUDGMENT .......... 7

II. RESPONDENTS' SECURITY INTEREST IS SUPERIOR TO PETITIONER'S JUDGMENT LIEN .......... 9

III. THE GRANTING OF THE SECURITY INTEREST WAS NOT A FRADULENT TRANSACTION .......... 11

A. Respondents Did Not Engage in a Constructive Fraud .......... 12

1. The Security Interest was Granted for Fair Consideration .......... 13

2. Respondents Entered Into The Security Agreement in Good Faith .......... 14

B. Petitioner Has Not Demonstrated Actual Fraud .......... 18

CONCLUSION .......... 19

# TABLE OF AUTHORITIES

FEDERAL CASES PAGE

*Anand v. National Republic Bank of Chicago*,
239 B.R. 511 (N.D. Illinios 1999) ........ 13

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, (1986) ........ 7

*Applied Theory Corp. v. Palladin Overseas Fund, Ltd.*,
323 B.R. 838 (Bankr. S.D.N.Y. 2005) ........ 13, 14

*Atlantic Shipping Corp., Inc. v. Chem. Bank*,
818 F.2d 240 (2d Cir. 1987) ........ 13, 15, 16, 17

*Baker v. Power Security Corp.*,
948 F. Supp. 255 (W.D.N.Y. 1996) ........ 7, 17, 18, 19

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........ 7

*Crowthers McCall Pattern, Inc. v. Lewis (In re Crowthers McCall Pattern, Inc.*,
129 B.R. 992 (S.D.N.Y. 1991) ........ 18

*GAMCO Investors, Inc. v. Vivendi*,
2013 U.S. Dist. LEXIS 4139 (S.D.N.Y. 2013) ........ 7

*HBE Leasing Corp. v. Frank*,
61 F.3d 10545 (2d Cir. 1995) ........ 12, 13, 18

*In re Actrade Financial Technologies, Ltd.*,
337 B.R. 791 (Bankr. S.D.N.Y. 2005) ........ 8, 11

*In re Checkmate Stereo & Electronics, Ltd.*,
9 B.R. 585 (Bankr. E.D.N.Y. 1981) ........ 15

*Le Café Crème, Ltd. v. Le Roux (In re Le Café Crème, Ltd.)*,
244 B.R. 221 (Bankr. S.D.N.Y. 2000) ........ 16, 18

*Market XT Holdings Corp,. v. Softbank AM Corporation*,
361 B.R. 369 (Bankr. S.D.N.Y. 2007) ........ 8, 13, 14

*McEnery v. Gallagher*,
1996 U.S. Dist. LEXIS 13993, 1996 WL 457297 (S.D.N.Y. 1996) ........ 10

*Nabisco, Inc. v. Warner—Lambert Co.*,
220 F.3d 43 (2d Cir. 2000) .......... 7

*Official Comm. of Unsecured Creditors of Champion Enters. v. Credit Suisse (In re Champion Enters.)*,
2010 Bankr. LEXIS 2720 (Bankr. D. Del. 2010) .......... 15, 16, 17

*Pashaian v. Eccelston Props.*,
88 F.3d 77 (2d Cir. 1996) .......... 13

*Priestley v. Comrie*,
No. 07 Civ. 1361, 2007 U.S. Dist. LEXIS 87386 (S.D.N.Y. Nov. 27, 2007) .......... 2, 19

*Priestley v. Comrie*,
No. 07 Civ. 1361, 2008 U.S. Dist. LEXIS 64827 (S.D.N.Y. Aug. 25, 2008) .......... 2

*Priestley v. Headminder, Inc.*,
647 F.3d 497 (2d Cir. 2011) .......... 2

*Salomon v. Kaiser* (*In re Kaiser*),
722 F.2d 1574, 1582 (2d Cir. 1983) .......... 18

*Sanchez v. Connecticut Natural Gas Co.*,
421 Fed. App'x 33 (2d Cir. 2011) .......... 7

*Sharp Int'l Corp. v. State Street Bank & Trust Co. (In re Sharp Int'l. Corp)*, 4
03 F.3d 43 (2d Cir. 2005) .......... 13, 15, 16, 17

*Silverman Laces, Inc. v. Hudson United Bank*,
2002 WL31412465 (Bankr. S.D.N.Y. 2002) .......... 8, 13

*United States ex rel. Solera Construction v. J.A. Jones Construction Company*,
2010 U.S. Dist. LEXIS 34065, 2010 WL 1269938 (E.D.N.Y. 2010) .......... 10

*United States v. McCombs*,
30 F.3d 310 (2d Cir. 1994) .......... 8, 11, 18

*Ward v. Building Material Distributors*,
36 B.R. 794 (Bankr. D. South Dakota 1984) .......... 14

STATE CASES

*American Investment Bank, N.A. v. Marine Midland Bank, N.A.*,
191 A.D.2d 690 (2nd Dep't 1993) .......... 12

*Art-Camera-Pix, Inc. v. Cinecom Corp.*,
64 Misc. 2d 764 (Sup. Ct. N.Y. Co. 1970) .......... 9

*Gelbard v. Esses,*
96 A.D. 2d 573 (2d Dep't 1983) .......... 7, 8, 9, 11

*Nat'l. Communications Corp. v. Bloch*,
259 A.D.2d 427 (1st Dep't 1999) .......... 7

*Resner v. Greeley*,
212 A.D.2d 619 (2d Dept. 1995) .......... 10

*Travelers Causalty and Surety Company of America v. Target Mechanical Systems Inc.*,
6 Misc.3d 1003A, (Sup. Ct. Kings Co. 2004) .......... 10

FEDERAL STATUTES

28 U.S.C. § 1962 .......... 10

STATE STATUTES

DCL § 272 .......... 12

DCL § 273a .......... 8, 12

DCL § 274 .......... 12, 15

DCL § 275 .......... 12

DCL § 276 .......... 18

New York UCC § 9-201 .......... 9

New York UCC § 9-310 .......... 9

New York UCC § 9-322 .......... 9

FEDERAL RULES

Fed. R. Civ. P. 69(a)(1) .......... 10

STATE RULES

CPLR § 5202 .......... 9, 11

CPLR § 5203 .......... 9

CPLR § 5225 .......... 9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X
KATHERINE PRIESTLEY,

Petitioner,

13 Civ. 4755 (PAE)

-against-

PANMEDIX INC., PARMEDIX INC. ELECTRONIC KNOWLEDGE PUBLISHING, INC., COGNITION PHARMACEUTICALS, LLC MCDONALD COMRIE, DAVID ERLANGER, PHILLIP YEE, BALLON, STOLL, BADER & NADLER, PC, HALKET WEITZ, CURTIS COMRIE, ROBERTA COMRIE, MARY ERLANGER, DARIN KAPLAN, RICHARD PECK, LINDA BIERER, TARA MACLEOD, MELVIN HELLER, JOHN THEODORACOPULOS, ALEXIS THEODORACOPULOS, STEPHANIE PARK, NICOLE KAPLAN, LITTLE ROCK, LTD, TANYA KAUSHIK, MABEL TRUESDELL, RELIDE REALTY, DENLOW PRIVATE TRUSTCO, LTD, and ROSS YOUNGMAN,

Respondents.
--------------------------------------------------------------------------------X

**RESPONDENTS' MEMORANDUM OF LAW IN SUPPORT**
**<u>OF MOTION FOR SUMMARY JUDGMENT</u>**

## <u>Preliminary Statement</u>

Petitioner initiated this turnover proceeding (and appointment of a receiver) in an effort to enforce her 2008 Federal Court judgment against Respondent PanMedix. As part of that effort, Petitioner alleges that PanMedix fraudulently transferred a security interest to the other Respondents in an effort to avoid her judgment. This argument is a decoy to distract the Court from the paramount issue in these proceedings. That issue is a determination of the priority of the Parties' claims, which the chronology of the facts indisputably demonstrate favor Respondents.

## FACTS

The facts of the underlying dispute are, by now, well known *Priestley v. Headminder, Inc.*, 647 F.3d 497 (2d Cir. 2011); *Priestley v. Comrie*, No. 07 Civ. 1361, 2008 U.S. Dist. LEXIS 64827 (S.D.N.Y. Aug. 25, 2008); *Priestley v. Comrie*, No. 07 Civ. 1361, 2007 U.S. Dist. LEXIS 87386 (S.D.N.Y. Nov. 27, 2007). This is buttressed by the fact that there is a significant amount of stipulated facts as well as a large amount of stipulated exhibits. Presently, the Petition purports to employ judgment enforcement procedures in order for Petitioner to enforce her judgment in the amount of $1,603,716.50. Respondents counter that their interest in the assets of PanMedix as well as the amount of their claims is superior to Petitioner's.

We will therefore focus this factual section on three major points: (1) the timeline of the judgment and the Security Agreement, (2) the Security Agreement itself, and (3) the nature of the relations that exist between the Parties.

***Timeline***. Petitioner, Ms. Priestley, made her first loan to PanMedix in April 2001. Stip. Fact.[1] 8. It should be noted that other creditors had already advanced money to PanMedix prior to Ms. Priestley. Stip. Fact. 62, 66. Priestley filed a UCC1 which expired as a matter of law in April 2006. UCC § 9-515. There was some state court litigation. Thereafter, the federal action was commenced on February 23, 2007. The judgment was entered on August 28, 2008. Stip. Fact. 20. At that point Petitioner chose to sit on her hands and do nothing to enforce her judgment. In point of fact on June 9, 2009, Petitioner's counsel contacted Judge Baer who warned Petitioner: take your judgment to the Marshal and levy on the Assets. Stip. Fact. 23. Exhibit 13.

---

[1] References to the Stipulated Facts will be indicated by Stip. Fact. References to Exhibits will be to the Joint Exhibit Binder.

During the summer of 2009 it came to PanMedix's attention that Petitioner had failed to extend her UCC and she was not making any movements towards enforcing her judgment. Stip. Fact 24, 25, 23. Faced with the fact that PanMedix had a significant amount of other debts besides the debt to Ms. Priestley, it was determined that a request for forbearance would be tendered to the various creditors. In return for the request for forbearance PanMedix would agree to pledge the assets it did have. Stip. Fact. 26-28; Exhibit 2.

The Security Agreement was dated and signed during the period August 24 through September 5, 2009. Exhibit 2; Stip. Fact 27-28. UCC1s were filed (Exhibit 14) at, or about, the same time. Still silence from Petitioner. It was not until December that she awoke from her slumber and made an effort to enforce her judgment against PanMedix by delivering an execution to the New York City Marshal. Stip. Fact 32. But by then, the race to the courthouse had all ready been won by the swifter party: the Respondents.

Frustrated with the result Petitioner commenced an action in state court seeking a declaration that her judgment lien had priority over the secured creditors' lien. She also sought damages under the New York's debtor-creditor law. Stip. Fact 36; Exhibit 18. This action has proceeded and is still pending. Stip. Fact. 37; Exhibit 19. Apparently frustrated with the pace at which that matter proceeded Petitioner commenced the instant action on July 10, 2013.

***The Security Agreement.*** The Security Agreement (Exhibit 2) is a rather uneventful, plain vanilla document. Along the way Petitioner has made many wild claims about the agreement: it was unsigned, there was no consideration, it was made up by Respondents. However, as the litigation has proceeded it has been revealed that Petitioner's claims had no basis in fact.

Therefore, what is evident for the Court to review is a rather standard security agreement listing a number of secured creditors. Petitioner has complained that the amount of Respondents' indebtedness is not listed in the Security Agreement. There is no requirement under the UCC that a security agreement list the amount of indebtedness. The Security Agreement provides for an enhanced interest rate going back to day one for the creditors' advances and for further credit extended. The enhanced interest rate is 13 percent. Exhibit 2, ¶ 13. The creditors agreed to forebear from collecting their debts (Exhibit 2, ¶ 3(b)) and they further agreed to act in unison until one of them determines to "break rank" in which case they must do so in writing. Exhibit 2, ¶ 12. It should also be noted that the Security Agreement is a blanket lien. Exhibit 2, ¶ 2. Respondents make this point because Petitioner's original security agreement was only applied to the patents. Exhibit 7.

***The Parties*.**

- Petitioner Priestley is a resident of the United Kingdom who met Respondent McDonald Comrie, President of PanMedix, when they were MBA candidates at Columbia University. (Exhibit 52, p. 18). She is an astute businesswoman and expert investor. (Exhibit 52, p. 15-26, 44-80). In her capacity as a director of Park Vale Capital Limited she structures deals for and provides investment advice to accredited investors. (Exhibit 52, p. 50-71). In fact, Petitioner introduced a number of investors, including some of the Respondents (Little Rock and Youngman) to PanMedix. Comrie Decl., ¶ 11. Petitioner has a track record of investing in what she herself terms "special situations" such as biotechnology and cyber technology, and is well acquainted with the risk of those companies going bankrupt, liquidating or shutting down. (Exhibit 52, 57-79). Her claim including interest exceeds $2.3 million
- Little Rock, Ltd. is a Bermuda-based BVI investment company. Exhibit 54, p. 5 the principal of Little Rock met Petitioner when they did some investments together at Goldman Sachs. Exhibit 54, pp.10-11. It bases its claim on a promissory note to Little Rock, Ltd., dated August, 28, 2002, $250,000, interest at 10%, due in one year. With interest under the Security Agreement its claim is now $1.107mm. Stip. Fact. 49; Exhibit 74.
- John Theodoracopulos is New York based businessman and independent investor. Exhibit 55, p. 5. He bases his claim on a promissory note dated December 8, 2004, $35,000, interest 10%, due in one year. With interest under the Security

Agreement its claim is now in excess of $347,000. He owns 1.12% of PanMedix's issued and outstanding shares. Stip. Fact. 50; Exhibit 74.

- Alexis Theodoracopulos was formerly a PanMedix employee as a project manager. He is currently a photographer. Exhibit 56, p. 8. He bases his claim on alleged back pay in the amount of $115,600, less $14,250 paid on account. With interest under the Security Agreement his claim is now more than $194,000. He owns .97% of PanMedix's issued and outstanding shares. Stip. Fact. 51. Exhibit 74. When questioned why he hadn't pursued recovery of the money from PanMedix he explained that it did not suit his interests. Exhibit 56, p. 8
- Curtis Comrie is employed by PanMedix as a project manager. He bases his claim on (a) alleged back pay in the amount of $592,100 and (b) and an alleged claim for 13 loans to Panmedix totaling $148,670.24 (as set forth in the schedule). With interest under the Security Agreement his claim now exceeds $1.9 million. Curtis Comrie is McDonald Comrie's brother. He owns 7.67% of PanMedix's issued and outstanding shares. Stip Fact. 52; Exhibit 34, 43, 46 and 74.
- Relide Realty Co. is PanMedix's landlord. Relide Realty bases its claim for alleged rent and additional rent in the amount of $69,788.41. Stip. Fact. 53; Exhibit 44. Relide is owned by Melvin Heller. Melvin Heller is a Commercial Real Estate Owner based in New York with interests in New York, Palm Beach, Southampton, Hawaii and Los Angeles. He testified that PanMedix is paying its current rent on a current basis. Exhibit 58, P. 9. He bases his claim on two promissory notes to Melvin Heller, dated September 5, 2002, $125,000, interest at 10 %, due in one year. To Melvin Heller, dated June 25, 2003, $50,000, interest at 10 %, due in one year. With interest under the Security Agreement his claim is now greater than $1.07 million. Stip. Fact. 64; Exhibit 74.
- Tanya Kaushik, PsyD. is employed by PanMedix as clinical neuropsychologist and project manager. She bases her claim on alleged back pay in the amount of $270,600. With interest under the Security Agreement her claim is now about $437,000. She owns .97% of PanMedix's issued and outstanding shares. Stip Fact. 54; Exhibit 34, 40, 46 and 74.
- Stephanie Park was a full time employee of PanMedix and occasionally works part-time. The bases of her claim was alleged back pay in the amount of $9,600, which debt was satisfied. Park was paid in full and waives any claim for interest against PanMedix under the Security Agreement. Stip. Fact. 55
- Phil Yee is an employee, officer and director of PanMedix. He bases his claim on (a) alleged back pay in the amount of $594,850 and (b) and an alleged claim for 12 loans to PanMedix totaling $36,950. With interest under the Security Agreement his claim is now more than $1.4 million. He owns 12.78% of PanMedix's issued and outstanding shares. Stip. Fact 56; Exhibit 34, 36, 46, 43 and 74.
- David Erlanger, PhD, ABPP – He is a neuropsychologist, CEO and founder of Headminder, and assistant professor of medicine at NYU Medical Center. The bases for his claim are alleged nine loans to Panmedix totaling $51,200 (as set

forth in the schedule). With interest under the Security Agreement its claim is now more than $167,000. Stip. Fact. 57; Exhibit 53, 43 and 74.

- Richard Peck is a retired chief executive of a consumer products company. He bases his claim on a promissory note to Richard and Natalie Peck, dated April 15, 2004, $30,000, interest at 10%, due in one year. With interest under the Security Agreement his claim is now more than $107,000. He owns 1.12% of PanMedix's issued and outstanding shares. Stip. Fact. 60; Exhibit 29 and 74.

- Darin and Nicole Kaplan – Darin is the CEO of a tutoring company. Nicole is a technology banker and Darin's wife. Darin was a former employee and director of Panmedix until 2001. They base their claims on two promissory notes to Darin F. and Nicole Kaplan, dated April 15, 2004, $15,000, interest at 10%, due in one year and to Darin F. and Nicole Kaplan, November 17, 2004, $15,000, interest 10%, due in one year. With interest under the Security Agreement their claim is now $103,444. They own 6.74% of PanMedix's issued and outstanding shares. Stip. Fact. 61; Exhibit 39, 46 and 74.

- Tara Macleod is an International Consumer Products consultant residing in the United Kingdom. The bases for her claim is an alleged loan of $58,280 to Panmedix in 2001, $55,000 of which was repaid by PanMedix between 2004 and 2007. With interest under the Security Agreement her claim is almost $153,000. She is the sister of McDonald Comrie. Stip. Fact. 62; Exhibit 42 and 74.

- McDonald Comrie – employee, director and CEO of PanMedix. He bases his claim on (a) alleged back pay in the amount of $777,500 and (b) and an alleged claim for 14 loans to PanMedix totaling $302,954.13 (as set forth in the schedule). With interest under the Security Agreement his claim is now in excess of $3.2 million. He owns 41.28% of PanMedix's issued and outstanding shares. Stip Fact 63; Exhibit 34, 37, 43, 46 and 74.

- Roberta Comrie is a Real Estate broker and angel investor (Exhibit 65, p. 5 and 7) based in Leesburg, VA. She bases her claim on two promissory notes to Roberta Comrie, dated July 11, 2003, $10,000, interest at 11.5 %, due in 91 days and to Roberta Comrie, dated November 19, 2003, $19,000, interest at 11.5 %, due in 91 days. With interest under the Security Agreement her claim is now about $438,000. She is the much older sister of McDonald Comrie and owns .74% of PanMedix's issued and outstanding shares. Stip. Fact. 65; Exhibit 27, 46 and 74.

- Mabel Truesdell, 82, year-old, retired New York City School teacher. She is an accredited investor. Comrie Decl. She bases her claim on a promissory note to Mabel Truesdell, dated March 30, 2001, $30,000, interest 11.5%, due in 60 days. With interest under the Security Agreement the claim is now almost $160,000. Stip Fact. 66. Exhibit 33 and 74.

- Halket Weitz, LLP – a Westchester based-law firm focused on technology and intellectual property law. Halket Weitz bases its alleged claim in the amount of $1,398,003.91 for unpaid legal fees and expenses. With interest under the Security Agreement its claim now exceeds $2.4 million. Stip. Fact. 67; Exhibit 41.

- Ballon Stoll Bader & Nadler, P.C. – a New York based-law firm focused on litigation, creditor's rights and corporate law. Ballon Stoll Bader & Nadler, P.C. bases its alleged claim in the amount of $105,058.13 for unpaid legal fees and expenses. With interest under the Security Agreement its claim is now in excess of $200,000. Stip Fact. 68; Exhibit 45.

## ARGUMENT

### I. RESPONDENTS ARE ENTITILED TO SUMMARY JUDGMENT

The standard for summary judgment is well known. If the evidence demonstrates there are no genuine issues of material fact concerning an essential element of the non-moving party's case, the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 105 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). An issue of fact is genuine if upon review of the evidence a reasonable trier of fact could decide in the non-moving party's favor. *See Sanchez v. Connecticut Natural Gas Co.*, 421 Fed. App'x 33, 34 (2d Cir. 2011) (quoting *Nabisco, Inc. v. Warner—Lambert Co.*, 220 F.3d 43, 45 (2d Cir. 2000)); *GAMCO Investors, Inc. v. Vivendi*, 2013 U.S. Dist. LEXIS 4139 (S.D.N.Y. 2013).

The Parties in this proceeding are each seeking summary judgment. It may be that summary judgment is inappropriate because the Respondent did not "agree" or "stipulate" to some of the Respondents' claims.[2] But Petitioner has not raised a genuine issue with regard to Respondents' factual assertions and Petitioner's own arguments are woefully low on facts

---

[2] This determination is traditionally done by testimony before a trier of fact, be it a plenary action or a special proceeding. *Baker v. Power Security Corp.*, 948 F. Supp. 255, 258 (W.D.N.Y. 1996) ("The Court **took testimony** concerning the factual issues raised in this turnover proceeding"); *Nat'l. Communications Corp. v. Bloch*, 259 A.D.2d 427, 574, 687 N.Y.S.2d 151, (1st Dep't 1999) ("the Special Referee properly required respondents to produce evidence … No such evidence was produced by respondent … **who testified** that he had no knowledge"); *Gelbard v. Esses* 96 A.D. 2d 573, 575, 465 N.Y.S.2d 264, (2d Dep't 1983) ("petitioners instituted the instant proceeding. A **trial** was held to determine … Special Term concluded, inter alia, that the transfer of the corporation's assets was not for fair consideration and was fraudulent")(emphasis supplied in the parenthetical quotes).

supporting her contention that Respondents engaged in fraud. The law is clear that in a turnover proceeding a creditor must establish the superiority of its rights by proof that the transferees' transfer was made fraudulently without fair consideration. CPLR 5225(b); *Gelbard v. Esses* 96 A.D. 2d 573, 576, 465 N.Y.S.2d 264, (2d Dep't 1983). Throughout these proceedings, Petitioner has relied heavily upon the procedural background of the case and citation to legal standards but has not asserted sufficient facts in support of her allegations of fraud against Respondents. This is not surprising, because the facts simply do not support Petitioner's interpretation of the events that lead to these proceedings.

In comparison, the documents and testimony given by Respondents demonstrate that they perfected their secured interest prior to Petitioner attempting to perfect her judgment. Further, although the burden of proof rests upon Petitioner, Respondents have provided evidence that the transfer of the security interests was made in good faith, without intent to defraud, for the fair consideration of forbearance of debt collection in exchange for the security interests. DCL § 273-a; *In re Actrade Financial Technologies, Ltd.*, 337 B.R. 791, 802, 806 (Bankr. S.D.N.Y. 2005)(citing *United States v. McCombs*, 30 F.3d 310, 326 (2d Cir. 1994)); *Market XT Holdings Corp,. v. Softbank AM Corporation*, 361 B.R. 369, 398-99 (Bankr. S.D.N.Y. 2007); *Silverman Laces, Inc. v. Hudson United Bank*, 2002 WL31412465 (Bankr. S.D.N.Y. 2002). In sum, Petitioner has not pointed to a single issue of fact evidencing a fraudulent transfer to defeat summary judgment. The Court should declare that Respondents' security interest is entitled to priority over Petitioner's. As such she is not entitled to a turn over or appointment of a receiver.

## II. RESPONDENTS' SECURITY INTEREST IS SUPERIOR TO PETITIONER'S JUDGMENT LIEN

The paramount issue in these proceedings is determination of the priority of the Parties' claims as Petitioner initiated this proceeding to determine the priorities of the Parties and thereby enforce her judgment. The law is clear. In a turnover proceeding pursuant to CPLR 5225 a creditor has the burden of establishing that his rights are superior to those of the transferees. CPLR 5225(b); *Gelbard*, 96 A.D. 2d at 576. In terms of timing the facts are undisputed and favor the Respondents. Petitioner's judgment lien is inferior to the secured interests conveyed in the Security Agreement as a matter of law. New York UCC § 9-322 establishes a bright line rule that, as between competing security interests and liens, priority is given to the security interest that is filed or perfected first. On August 24, 2009, PanMedix entered into the Security Agreement with its secured creditors, including the other Respondents. Exhibit 2. This created a security interest pursuant to New York UCC § 9-201, which was perfected by Respondents filing UCC-1 financing statements between August 23, 2009 and August 28, 2009 (Exhibit 14), thereby perfecting their secured interest in "all patents, all intellectual property, all general intangibles, all tangible personal property and all real property or interest therein and all proceeds from any of the above." *See* NY § UCC 9-310.

Petitioner was awarded her Federal Court judgment on August 28, 2008. Exhibit 11. Petitioner did not file her judgment in state court, thereby creating a judgment lien and perfecting that lien with respect to PanMedix's real property only, until November 30, 2009 (Exhibit 15; two months after Respondents perfected their security interests. CPLR 5203. On December 3, 2009, Petitioner sought to perfect her interest in PanMedix's personal property by having the Marshal levy on the property. Exhibit 17. But by then it was too little to late. CPLR 5202; *see also Art-Camera-Pix, Inc. v. Cinecom Corp.*, 64 Misc. 2d 764, 765, 315 N.Y.S.2d 991 (Sup. Ct.

N.Y. Co. 1970) ("Under our law, the mere entry of judgment creates no lien against the personal property of the judgment debtor. The lien comes into existence only upon issuance of execution to the Sheriff. **Thus, the race, under State law, is to the swift**" (internal citations omitted)(emphasis supplied)). Consequently, because the "secured creditor's UCC-1 filing predated perfection by judgment creditors of their judgment liens, rights of secured creditor come first." *Travelers Causalty and Surety Company of America v. Target Mechanical Systems Inc.*, 6 Misc.3d 1003A, 800 N.Y.S.2d 358 (Sup. Ct. Kings Co. 2004)(citing *Resner v. Greeley*, 212 A.D.2d 619, 622, 622 N.Y.S.2d 330 (2d Dept. 1995)); *see, also, United States ex rel. Solera Construction v. J.A. Jones Construction Company*, 2010 U.S. Dist. LEXIS 34065, 2010 WL 1269938 (E.D.N.Y. 2010)(citing in part *Resner* and explaining the requirements for perfecting a judgment lien on personal property).

Petitioner's error stems from either a lack of knowledge concerning priorities or a mistaken assumption that the New York rules regarding priorities are inapplicable to her because she secured a judgment in the Southern District of New York. This assumption is flatly contradicted by 28 U.S.C. § 1962, which mandates that "every judgment rendered by a district court within a State shall be a lien on the property located in such State in the same manner, to the same extent and under the same conditions as a judgment of a court of general jurisdiction in such State." *See also*, Fed. R. Civ. P. 69(a)(1) ("A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution--and in proceedings supplementary to and in aid of judgment or execution--must accord with the procedure of the state where the court is located."); *see, also, McEnery v. Gallagher*, 1996 U.S. Dist. LEXIS 13993, 1996 WL 457297 (S.D.N.Y. 1996) (holding "Governing state law -- in this case New York law -- determines whether a judgment creditor's lien has "perfected" and therefore "when

the property at issue is personal property, the judgment perfects upon docketing and delivery of a writ of execution to the sheriff for levy.").

Petitioner maintains that her judgment is superior to the security interest of the Respondents because the 2008 federal court judgment read in conjunction with a supposed December 2008 Pledge of Payment Agreement "effectively constituted" a perfected levy under CPLR 5202(b). Exhibit 12. Apart from failing to provide any legal authority for the astonishing premise that a judgment-and-an-agreement automatically merge into a properly perfected security lien, this argument fails because the supposed December 2008 Pledge of Payment Agreement was not an agreement. The Parties did not fully agree to the terms of that agreement and it, in fact, was never even executed by all parties. *See* Exhibit 12. The supposed December 2008 Pledge of Payment Agreement cannot provide a security interest superior to that of the Secured Creditors.

## III. THE GRANTING OF THE SECURITY INTEREST WAS NOT A FRAUDULENT TRANSACTION

In light of the plain fact that Respondents' security interest was perfected prior to Petitioner's security interest, Petitioner argues that the Security Agreement should be annulled because it was a fraudulent conveyance under New York Debtor & Creditor Law ("DCL"). This is a red herring meant to distract the Court from the reality that Respondents' security interest takes priority over Petitioner's judgment. Since Respondents recorded first, Petitioner must establish that the transfer was fraudulently made without fair consideration and therefore be set aside. *Gelbard*, 96 A.D.2d at 576. In an action seeking to set aside a fraudulent conveyance, the party seeking the relief has the burden of proof to establish that the transfer was made without fair consideration **and** was not made in good faith. *Actrade Financial Technologies*, 337 B.R. at 806 (citing *McCombs*, 30 F.3d 310). Petitioner's arguments fail because the conveyance made in

the Security Agreement was for fair consideration as a matter of law and there was no actual intent to defraud as a matter of law.

Rather than provide facts in support of her contentions, Petitioner has stated that she does not need to prove fraudulent conveyance, and offered bare, blanket assertions that there is an absence of fair consideration and the issues should thus be resolved in her favor. Just another instance of Petitioner's belief that an incantation of incorrect or unsupported facts will – if repeated enough – carry the day. *See* ECF No. 13, Petitioner's Opposition to Motion to Stay or Dismiss, Pg. 2; ECF No. 12, August 30, 2013 Decl. of Jay Edmond Russ, ¶ 15.

**A. Respondents Did Not Engage In a Constructive Fraud**

A conveyance is deemed constructively fraudulent under the DCL if it is made without fair consideration and one of the following conditions is also met: (i) the transferor is insolvent or will be rendered insolvent by the transfer; (ii) the transferor is engaged or about to be engaged in a business transaction for which its remaining property constitutes unreasonably small capital; or (iii) the transferor is believes that it will incur debt beyond its ability to pay. DCL §§ 273, 274, 275. Thus, both insolvency **and** inadequacy of consideration must necessarily be shown in order for a conveyance to be constructively fraudulent. *American Investment Bank, N.A. v. Marine Midland Bank, N.A.*, 191 A.D.2d 690, 692, 595 N.Y.S.2d 537 (2nd Dep't 1993). The party challenging the conveyance has the burden of proving insolvency and lack of fair consideration. *American Investment Bank*, 191 A.D.2d at 692.

A conveyance is made for fair consideration when the recipient of the property conveys property or discharges an antecedent debt and that exchange is a fair equivalent of the property received. DCL § 272. Most importantly, the exchange must be made in good faith. *HBE Leasing Corp. v. Frank*, 61 F.3d 1054, 1058-1059 (2d Cir. 1995). Good faith is an elusive

concept under the DCL. *Sharp Int'l Corp. v. State Street Bank & Trust Co.* (*In re Sharp Int'l. Corp*), 403 F.3d 43, 53-54 (2d Cir. 2005). However, bad faith is not an exception to the general principle that satisfaction of a preexisting debt qualifies as fair consideration for a transfer of property. *Sharp*, 403 F.3d at 54 (quoting *Pashaian v. Eccelston Props.*, 88 F.3d 77, 85 (2d Cir. 1996). The only exception to that rule is when the transferee is an insider of the transferor. *Sharp*, 403 F.3d at 54 (quoting *Atlantic Shipping Corp., Inc. v. Chem. Bank*, 818 F.2d 240, 249 (2d Cir. 1987); *see also HBE Leasing Corp. v. Frank*, 48 F.3d 623, 634 (2d Cir. 1995).

**1. The Security Interest Was Granted for Fair Consideration**

First, the conveyance was made for fair consideration, including fair value. A grant of a security interest in collateral in exchange for an agreement to forbear collecting[3] on an antecedent debt constitutes fair consideration. *See Market XT Holdings Corp.*, 361 B.R. at 398-99 ("The cases are uniform that the grant of collateral for a legitimate antecedent debt is not, without more, a constructive fraudulent conveyance . . . . Thus, the federal cases hold that a grant of collateral together with forbearance constitutes reasonably equivalent value."); *Applied Theory Corp. v. Palladin Overseas Fund, Ltd.,* 323 B.R. 838, 840 (Bankr. S.D.N.Y. 2005) (holding that debtor received reasonably equivalent value as a matter of law because the "lender's decision not to demand payment, but rather to extend the loans, gave the debtors 'an opportunity to avoid default, to facilitate its rehabilitation, and to avoid bankruptcy.'"); *Silverman Laces*, 2002 WL31412465 (holding that debtor's granting of a security interest in inventory to creditor for loans previously extended and creditor's agreement to forbear from pursuing its remedies was reasonable equivalent value); *Anand v. National Republic Bank of Chicago,* 239.B.R. 511, 514, 518-19 (N.D. Illinois 1999)(holding that debtor's assignment of his

[3] Additionally, the Defendants agreed to only pursue PanMedix on an "all-in" basis, thereby giving up the ability to chart their individual courses against PanMedix (Security Agreement, ¶ 13, Exhibit 2).

60% interest in certain property as collateral for the loans previously made by the bank in exchange for forbearance by the bank in enforcing its rights against the debtor was of reasonably equivalent value); *Ward v. Building Material Distributors*, 36 B.R. 794, 799 (Bankr. D. South Dakota 1984) (holding debtor's grant of a security interest to creditors in antecedent debt of the debtor was reasonably equivalent in value to the promise of forbearance of suit by the creditors).[4] The facts clearly demonstrate that the conveyance here was made for fair value, as PanMedix granted a security interest in collateral to Respondents in exchange for Respondents' agreement to forbear collecting on antecedent debts owed to them by PanMedix.

**2. Respondents Entered Into The Security Agreement in Good Faith**

Further, fair consideration includes elements of good faith. *See*, *e.g.*, *Market XT Holdings Corp.*, 361 B.R. at 398-99. Petitioner alleges that bad faith is present because after Petitioner obtained a judgment in federal court, Panmedix "pretended" to negotiate with the Petitioner to satisfy the judgment before entering into the Security Agreement with Respondents. This argument is completely disingenuous. First, Petitioner and Panmedix negotiated for almost *one year* between the date of the unperfected federal judgment and the date of the Security Agreement. In fact, both Panmedix and Petitioner signed the settlement Pledge Agreement. Second, nothing prevented the Petitioner from filing her federal judgment in state court, thereby perfecting her security interest, during the entire year she negotiated with Panmedix prior to the Security Agreement. Third, no less than the Federal Judge on this matter advised Petitioner to take steps to secure the judgment. (Exhibit 13). Petitioner has not provided any facts demonstrating that Respondents acted in anything but good faith.

---

[4] Courts typically use the terms "reasonably equivalent value" and "fair consideration" interchangeably, and do not usually make a distinction between the standards required for each of them, respectively. *Applied Theory Corp.*, 323 B.R. at 840.

A lack of good faith can be shown when a conveyance is made in payment of an antecedent debt when the transferees are insiders with control over the corporation's finances. *In re Checkmate Stereo & Electronics, Ltd.*, 9 B.R. 585, 617-618 (Bankr. E.D.N.Y. 1981). Under New York law, insiders are defined as officers, directors or majority shareholders of the debtor. *See*, *e.g.*, *Sharp*, 403 F.3d at 54; *Atlantic Shipping,* 818 F.2d at 249.

For example, in *Sharp*, the bankruptcy trustee alleged that a bank creditor had discovered fraudulent acts of debtor's controlling shareholders before they were discovered by other creditors and then arranged for those shareholders to repay its loans from the proceeds of new lenders who did not know about the fraud. *Sharp*, 403 F.3d 43. The Second Circuit acknowledged that bad faith is not an exception to the principle that satisfaction of a preexisting debt qualifies as fair consideration for a transfer of property except where the transferee is an insider. *Sharp*, 403 F.3d at 54. However, as the bank was not an officer, director or majority shareholder of the debtor it was clearly an outsider and not subject to that exception. *Sharp*, 403 F.3d 43 at 55. Therefore, the payments on account of an antecedent debt were made in good faith and not fraudulent under the DCL. *Sharp*, 403 F.3d at 54-56.

A case similar to *Sharp* is *In re Champion Enterprises. Official Comm. of Unsecured Creditors of Champion Enters. v. Credit Suisse (In re Champion Enters.)*, 2010 Bankr. LEXIS 2720 (Bankr. D. Del. 2010). There, as the debtors' business was declining, debtors and the defendant lenders provided for the debtors' issuance of subordinated notes to pay down prior notes in exchange for the lenders' assigning certain secured debt. *Champion*, 2010 Bankr. LEXIS 2720. The creditor committee contended that debtors' transfers of certain cash, collateral and other rights to those lenders were avoidable fraudulent transfers under DCL § 274. *Champion*, 2010 Bankr. LEXIS at 54. The creditor committee attempted to distinguish the case

from *Sharp* by pointing to the lenders' actual participation in misconduct, including falsifying prospectuses, in order to shift their risk when debtor's financial condition was discovered. *Champion*, 2010 Bankr. LEXIS at 58. The court noted that the appropriate focus was on the lenders' good faith in receiving the transfers. *Champion*, 2010 Bankr. LEXIS at 59. There was no need to consider bad faith concerning satisfaction of the pre-existing debt since the lenders were not officers, directors or managing shareholders of debtor. *Champion Enters*, 2010 Bankr. LEXIS at 60. Thus, the transfers were for fair consideration. *Champion*, 2010 Bankr. LEXIS at 60.

A case in which the transferees were found to be insiders is *Le Café Crème, Ltd. v. Le Roux*. *Le Café Crème, Ltd. v. Le Roux* (*In re Le Café Crème, Ltd.*), 244 B.R. 221 (Bankr. S.D.N.Y. 2000) *Le Café Crème*. There, the debtor sought to set aside loan repayments made to respondents within one year of filing its bankruptcy petition pursuant to a written agreement, because the transfers were constructively fraudulent. The United States Bankruptcy Court for the Southern District of New York, citing the DCL, agreed with debtor. *Le Cafe Creme*, 244 B.R. at 241. The debtor was insolvent when it made the transfers and the respondents were insider majority shareholders with control of debtor's finances who knew of debtor's insolvency at the time the loan repayments were made. *Le Cafe Creme*, 244 B.R. at 241 (citing *Atlantic Shipping*, 818 F.2d at 249. The transfers thus lacked good faith for purposes of the DCL. *Le Cafe Creme*, 244 B.R. at 241.

Here Petitioner claims a $2+ million judgment incuding interest. And we have various stratas of parties. But how does it stack up. Let's take a look:




The outside Investor's claims swamps Petitioners. We don't even have to make an inquiry into the middle ground or analyze for poetioal insiders. The result is the same if there is no accounting for interest

As in *Sharp* and *Champion*, Respondents are alleged to have orchestrated the Security Agreement to better position themselves than Petitioner. However, this does not render any Respondent who is not an officer, director or majority shareholder with control of PanMedix's finances an insider. The focus must be on all Respondents', even alleged insiders, good faith in entering into the Security Agreement. *Champion*, 2010 Bankr. LEXIS at 59. There is no evidence that any of the Respondents entered into the Security Agreement with anything but good faith. *See* Exhibits 53-68.

In any event, for those Respondents who may in no way qualify as insiders, the granting of the security interest was payment for an antecedent debt, and forbearance on enforcement of an antecedent debt constitutes fair consideration. *Sharp*, 403 F.3d at 54; *Baker*, 948 F. Supp. at 260 (citing *Atlantic Shipping*, 818 F.2d at 249). Further, if PanMedix's assets were insufficient

to satisfy this antecedent debt before satisfying Petitioner's judgment, this failure to satisfy her judgment cannot be considered to be the proximate cause of the conveyances to Respondents; and the transfers cannot be considered fraudulent. *Baker v. Power Security Corp.*, 948 F. Supp. 255, 260 (W.D.N.Y. 1996). The facts clearly demonstrate fair consideration and good faith in the transfer of the security interest. As that prerequisite of constructive fraud is unsatisfied, Respondents' need not address the remaining elements of constructive fraud.

**B. Petitioner Has Not Demonstrated Actual Fraud**

A conveyance will be set aside as fraudulent under DCL § 276 if it was incurred with actual intent to hinder, delay or defraud either present or future creditors. DCL § 276. Actual intent to defraud must be proven by clear and convincing evidence. *See McCombs*, 30 F.3d 310. It is the intent of the transferor not the transferee(s) that is dispositive for purpose of actual fraud. *HBE Leasing Corp*, 61 F.3d at 1059 n.5; *see also Crowthers McCall Pattern, Inc. v. Lewis* (*In re Crowthers McCall Pattern, Inc.*), 129 B.R. 992, 999 (S.D.N.Y. 1991). However, in acknowledgment of the difficulty of obtaining direct evidence of actual intent, the Second Circuit has adopted certain "badges of fraud" as circumstantial evidence of actual intent. *Le Café Crème,* 244 B.R. at 239 (quoting *Salomon v. Kaiser* (*In re Kaiser*), 722 F.2d 1574, 1582 (2d Cir. 1983). These badges of fraud include:

> (1) inadequacy or lack of consideration;
> (2) a familial, friendship or close associate relationship between the parties;
> (3) retention of possession, benefit or use of the property in question by the transferor;
> (4) the financial condition of the party sought to be charged both before and after the transaction;
> (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties or pendency or threat of suits by creditors;
> (6) the general chronology of the transaction(s) in question.

*Le Café Crème*, 244 B.R. at 239 (quoting *Kaiser*, 722 F.2d at 1582).

Respondents already addressed the adequacy of their consideration in the prior discussion of Petitioner's constructive fraud allegations. Although Respondents engaged in the transfer after entry of Petitioner's judgment, the transfer was not part of a pattern of transactions or course of conduct; PanMedix's assets were insufficient to satisfy the antecedent debts of the Respondents before Petitioner obtained her judgment. *See*, *Priestley v. Comrie*, No. 07 Civ. 1361, 2007 U.S. Dist. LEXIS 87386, *3 (S.D.N.Y. Nov. 27, 2007; *Baker*, 948 F. Supp. at 260.

There are close relationships between PanMedix and some of the Respondents. Defendant McDonald Comrie is the principal of PanMedix and Curtis Comrie, Tara Macleod and Roberta Comrie are his relatives. Philip Yee is an officer of PanMedix. Headminder, Inc. and its principal, Dr. David Erlanger, are close associates of PanMedix. Respondents Ballon Stoll Bader & Nadler, P.C. and Halket Weitz, LLP provide legal counsel to PanMedix. However, the remaining Respondents, Darin Kaplin, Richard Peck, Ross Youngman, Melvin Heller, John Theodoracopulos, Alexis Theodoracopulos, Stephanie Park, Nicole Kaplan, Little Rock, Ltd. and Tanya Kaushik are not family members, friends or close associates of PanMedix. The burden is upon Petitioner to provide clear and convincing evidence of fraudulent intent of PanMedix in conveying the security interests apart from this single circumstantial badge that PanMedix had a close relationship with some of the Respondents.

## CONCLUSION

There is not a single issue of fact evidencing that Petitioner's judgment takes priority over Respondents' security interests. It is an incontrovertible fact that Respondents perfected their security interests before Petitioner perfected her judgment. Further, Respondents entered into the Security Agreement in good faith and the security interests therein were conveyed for fair consideration. As there are no triable issues of fact before the Court, Respondents

respectfully request that the Court grant their motion for summary judgment in its entirety, with such other and further relief as the Court deems just and proper.

Dated: New York, New York
February 5, 2014

BALLON STOLL BADER & NADLER, P.C.

Dwight Yellen

By: Dwight Yellen (DY 6547)
Michelle Mandelstein (MM 2229)
*Attorneys for Respondents*
729 Seventh Avenue - 17th Floor
New York, New York 10019
Tel. (212) 575-7900